David P. WOHL, Plaintiff,

v.

**CLEVELAND BOARD OF EDUCATION et al.,**
Defendant.

David P. WOHL, Plaintiff,

v.

**Leroy L. MELTON, Defendant.**

Nos. C88–2151, C89–1558.

United States District Court,
N.D. Ohio, E.D.

June 15, 1990.

Bruce C. Allen, Blair Hodgman, Cleveland, Ohio, for plaintiff.

James G. Wyman, Cleveland, Ohio, for Cleveland Bd. of Educ.

William A. Viscomi, Katherine Kerka, Cleveland, Ohio, for Leroy Melton.

BATTISTI, District Judge.

In one of these consolidated employment discrimination cases, Case No. 89–1558, Defendant Leroy Melton ("Melton") has filed a Motion for Summary Judgment. Fed.R. Civ.P. 56. Plaintiff David P. Wohl ("Wohl") has opposed this Motion. For the following reasons, the Motion for Summary Judgment must be DENIED.

The relevant facts, briefly stated, show that Wohl, an English teacher at John Hay High School, is of Chinese descent. Melton, the principal at John Hay High School, is black. On July 8, 1987, after vacancies

had been declared for several high school department heads, vacancies were posted on an Announcement of Vacancies, pursuant to collective bargaining procedures. *Brief in Response to Defendant Melton's Motion for Summary Judgment* at 2; Pl. Exh. 2. Wohl, a veteran English teacher in the Cleveland School system, applied for the position of English Department Chair, along with four other candidates. Melton set up hiring committees, interviewed each candidate, and made the ultimate recommendation of the successful candidate. Melton Deposition ("Depo.") at 30–32. On August 14, 1987, during the interview for finalists, Wohl asked Melton to provide a copy of the Announcement of Vacancies. Wohl xeroxed Melton's copy; later, Wohl discovered that next to each of the four of the five department openings, Melton had written both the name of a candidate and identified that person's race. *Brief in Response, supra,* 2–3; Pl.Exh. 1. Several weeks after this interview, Linda Wilson, a black teacher, was officially promoted by letter of September 1, 1987, effective September 3, 1987. *Id.,* at 6; Pl.Exhs. 1 & 28. Wilson's name and race were inscribed on Melton's copy of the Announcement of Vacancies. Wohl was officially notified that he was not promoted by letter dated September 10, 1987. *Id.,* Pl.Exh. 9.

After receiving his right to sue letter, dated March 31, 1988, Wohl instituted a *pro se* Complaint on June 29, 1988 against Defendant Cleveland Board of Education ("The Board") in Case No. 88–2151. On July 14, 1988, after having obtained counsel, Wohl filed an Amended Complaint against the Board alleging causes of action under Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. On August 17, 1989, Wohl filed a separate Complaint, Case No. 89–1558, against Melton in his personal capacity, and alleged claims under 42 U.S.C. §§ 1981, 1983.

In Case No. 89–1558, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) & (4).[1]

In his Motion for Summary Judgment, Melton proffers several grounds, which are addressed *seriatum.*

 Without citation to any caselaw, Melton sweepingly argues that under the collective bargaining agreement between the Cleveland Teacher's Union and the Cleveland Board of Education, Wohl must resolve his failure to promote claim in arbitration, not under the Civil Rights laws. Kindly stated, this argument is specious. As Wohl correctly points out, the Supreme Court rejected this argument in *Alexander v. Gardner Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974) (Title VII). The Sixth Circuit, in *Lyght v. Ford Motor Co.,* 643 F.2d 435, 439 (6th Cir.1981) (Lively, J.) explained *Gardner–Denver:*

> In reaching this conclusion, the Court found that the 1964 Act assigned 'plenary powers' to the federal courts 'to secure compliance with Title VII,' 415 U.S. at 45, 94 S.Ct. at 1018, and noted a legislative scheme in other civil rights acts of according "parallel or over-lapping remedies against discrimination." *Id.* at 47, 94 S.Ct. at 1019. After remarking that Title VII provides for consideration of job discrimination claims in several forums, the Court concluded:

> And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

415 U.S. at 47–49, 94 S.Ct. at 1019–1020 (emphasis supplied).

Although the applicable causes of action against Melton are based on § 1981 & § 1983, the reasoning of *Gardner–Denver*

---

1. Additionally, subject matter jurisdiction arises under 28 U.S.C. § 1331 (federal question).

This Court has subject matter jurisdiction in Case No. 88–2151 pursuant to 42 U.S.C. § 2000e–5(f)(3).

applies. *See Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (Title VII disparate treatment framework of proof—*McDonnell Douglas/Burdine* applies to § 1981 cases). Because Melton has failed to proffer any caselaw showing otherwise, his argument must be rejected.

■ Melton next argues that Wohl's § 1983 claim, to the extent it pleads a § 1983 action, is barred by the statute of limitations. He correctly notes that in Ohio, the limitations period for § 1983 actions is two years. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 582, 102 L.Ed.2d 594, 605–06 (1989) (Courts should borrow the general or residual state statute of limitations); *Browning v. Pendleton,* 869 F.2d 989, 991–92 (6th Cir.1989) (*en banc*) (O.R.C. § 2305.10 applies).

Relying upon the unsupported factual assertions of counsel—which are contrary to the identified portions of the pleadings, depositions, and other evidence on file—Melton desperately argues that the § 1983 cause of action accrued 1) on July 8, 1987, when Linda Wilson's appointment [sic] to Department Chair was posted; or 2) on August 12–13, 1987 [sic], when Melton's counsel claims Wohl was supposedly interviewed by Melton. In response, Wohl has provided the Court with evidentiary materials: the Exhibits show that Wilson was officially promoted on September 3, 1987, by letter dated September 1, 1987 and that Wohl officially learned of Wilson's promotion by letter dated September 10, 1987; that Melton, in a deposition, claims that he informally notified Wohl on August 20, 1987. Melton Depo. at 149. These dates are significant because Wohl's Complaint was filed on August 17, 1989.

It must be noted that a statute of limitations is an affirmative defense; at trial, Melton has the ultimate burden of proof. He also has an initial burden:

> Of course, a party seeking summary judgment always bears an initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.[2]

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

It is doubtful whether Melton has met this minimal, initial responsibility under *Celotex;* a motion for summary judgment seems inappropriate for imaginary facts.

Nevertheless, it is clearly settled that federal law governs the question when a federal cause of action accrues. "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner,* 742 F.2d 262, 272–73 (6th Cir.1984) (Contie, J.) Wohl's cause of action accrued when he knew or should have known that he was not promoted by race. From the evidence in the record, he should have reasonably known of the alleged discrimination when he was officially notified of Wilson's promotion in September, 1987. Even if Melton informally notified Wohl of Wilson's promotion on August 20, 1987—thus giving Wohl knowledge of his alleged injury then, Wohl's Complaint is still timely. *See Melton Depo.* at 149. Thus, Melton's second argument is devoid of merit.

■ Melton additionally argues that Wohl's claims are barred by the Sovereign

---

**2.** Justice Brennan, joined by two Justices, carefully and clearly explained the moving party's burden of production:

> This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A Wright [& Miller] § 2727. The court need not decide whether the mov-

ing party has satisfied its ultimate burden of persuasion unless and until the court finds that the moving party has discharged its initial burden of production. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–161 [90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142] (1970) (footnote omitted).

*Celotex v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting).

Immunity statute, O.R.C. § 2744.03(A)(6).[3] In response, Wohl argues that the Sovereign Immunity statute does not bar actions brought under the federal civil rights laws. He cites O.R.C. § 2744.09, which provides:

This chapter does not apply to, and shall not be construed to apply to, the following:

\* \* \* \* \* \*

(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision;

(C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment;

(E) Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of § 2744.07 [indemnification of public employees] of [ORC] shall apply to such claims or related civil actions. (Emphasis supplied)

The plain express language of this statute shows that Melton's argument, on its face, is frivolous.

■ Finally, Melton argues that failure to promote claims are not actionable under 42 U.S.C. § 1981. Of all Melton's arguments, this argument could be construed, objectively, a respectable one. Yet, as it has been framed, it is far too sweeping, and simply contradicts the express holding of *Patterson v. McLean Credit Union*, ——

U.S. ——, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989).[4]

In interpreting 42 U.S.C. § 1981, the Court expressly held that discriminatory promotions were actionable, "where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. As Judge Posner has recently emphasized, the Court immediately cited *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (refusal of law firm to accept associate into partnership) (Title VII). *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989) (Posner, J.). Although the "new and distinct relation between the employee and the employer" has some ambiguity, *see, Malhotra, supra*, at 1311, this Court agrees with Wohl, that under *Patterson*, this case is actionable under § 1981. Two reported decisions of district courts in this Circuit have grappled with the "new and distinct relation" test: both courts denied employer motions for summary judgment. *Wilburn v. Dial Corp.* 724 F.Supp. 521 (W.D.Tenn. 1989); *Hudgens v. Harper Grace Hospitals*, 728 F.Supp. 1321 (E.D.Mich.1990). In his well-written decision in *Hudgens, supra*, Judge Gilmore carefully analyzed numerous lower court decisions applying *Patterson* to claims of failure to promote. He concluded:

[T]rial courts analyze failure-to-promote claims under *Patterson* by carefully examining what changes, if any, will result from the promotion and determining if the combined changes are significant enough to give rise to a new and distinct

---

**3.** The statute reads:

(A) In a civil action brought against ... an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental ... function, the following ... immunity may be asserted to establish non-liability:

\* \* \* \* \* \*

In addition to any immunity or defense...., and in circumstances not covered by that division, the employee is immune from liability.

**4.** Melton cites Section 2(a) of the Syllabus as the basis for his argument. That Section summarized one holding of *Patterson:* that claims of

racial harassment relating to conditions of employment are not actionable under § 1981. But it must be stressed that "[t]he Syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader." *See United States v. Detroit Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499 (1906). For the convenience of Melton's counsel, Section 3(a) of the Syllabus summarizes which types of discriminatory promotions are actionable under § 1981. However, in federal court, it is not only customary, but expected that counsel *cite and read the actual decision. Cf.* Fed.R.Civ.P. 11.

relationship. Their inquiry is clearly fact specific. The developing body of case law has identified several significant changes: changes in pay, in duties and responsibilities, in status from hourly to salaried employee, in required qualifications, in responsibility level, in daily duties, in potential liability, and in pension and other benefits. There are potentially many factors that could arise to influence the determination, for example, change in location, in grade, in department or office, and in use of equipment. The cases that have addressed the issue instruct that the trial court must consider evidence of all the changes.... [and] then exercise reasoned judgment as to whether that change will work a new and distinct relation between the parties. This judgment must consider not only the number of resulting changes, but the magnitude of individual changes and other changes as a whole.

*Hudgens,* 728 F.Supp. at 1325–26.

In his Complaint, Wohl properly alleges that the promotion from English teacher to the English Department Chair constitutes a new and distinct relationship. *See* Complaint, ¶ 7 [5]. In this fact specific inquiry, Wohl has properly directed the Court to the pertinent portion of the Deposition of Norma Fleming, the "subject supervisor" of all English Departments in the Cleveland Public Schools:

> Q: What is the difference between a department head and a regular teacher in an English Department?
>
> A: The department head has responsibility of providing leadership for the personnel in that department, to be the liason person from the reading, English, language arts office, and to communicate information that is pertinent to reading, English, and language arts, to oversee the activities of that department, to be knowledgeable of each person's responsibility as it pertains to the affirmative reading skills program, our components, to make certain that the teachers have

the materials that are necessary for program implementation, to document the schedule of classes, and to generally be a support to the implementation of reading, English, language arts in that building.

> Q: Would you agree it involves significant additional responsibilities?
>
> A: Yes.

*Fleming Depo.* at 43–44.

Thus, in light of *Patterson* and *Hudgens,* Melton's final argument must be rejected.

Accordingly, Melton's Motion for Summary Judgment must be DENIED. The Court will seasonably address and set a hearing for Wohl's Motion for Rule 11 sanctions as to the filing of this Motion for Summary Judgment.

Trial is set for June 19, 1990 at 10:00 a.m.

IT IS SO ORDERED.

---

5. Paragraph 7 of the Complaint reads:
 The position of department head represents a new and different relationship to the Cleveland Public Schools from that of an ordinary teacher, in that the position involves supervisory respon-

sibility for a large department, selection of course materials, selection of new teachers, a higher salary, and significant non-teaching time used for administrative work.....