14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Mark E. LONGSTRETH, The Estate of Mark E. Longstreth,
Deceased, by Linda S. Colling, Administrator,
Plaintiffs-Appellants,
Linda S. Colling; David M. Longstreth, Sr., Plaintiffs,
v.
FRANKLIN COUNTY CHILDREN SERVICES, et al., Defendants-Appellees.
 No. 93-3190.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1993.
 
 Before: MILBURN and BATCHELDER, Circuit Judges; and COHN, United States District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, the Estate of Mark E. Longstreth, deceased, by Linda S. Colling, Administrator, appeals the district court's grant of summary judgment in favor of defendants in this civil rights action filed pursuant to 42 U.S.C. Sec. 1983, which arises from the death of Mark E. Longstreth while in the custody of the Franklin County Children Services. On appeal, the issue is whether the district court erred in granting summary judgment based upon the res judicata effects of a prior Ohio state court decision in a wrongful death action between the same parties. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 The plaintiffs in the action below were the Estate of Mark E. Longstreth ("Longstreth"), deceased, by Linda S. Colling, Administrator; Linda S. Colling, the deceased's natural mother; and David M. Longstreth, Sr., the deceased's natural father.[1] The defendants are Franklin County Children Services; Franklin County Children Services Board; Franklin Village; Franklin County, Ohio; and Carol Hoversten-Pepper[2], as an employee and agent of Franklin County Children Services.
 
 
 3
 During the summer of 1989, Mark Longstreth, aged 16, was committed to the Franklin County Children Services ("Children Services") as an unruly minor. After being committed to the custody of Children Services, Longstreth was placed at the Transition Center, a temporary residential facility at Children Services.
 
 
 4
 On July 22, 1989, Longstreth and six other youths were taken on a recreational outing, a "merit outing," by defendant Carol Hoversten-Pepper. Hoversten-Pepper was a social worker employed at Children Services as an activities therapist. Her duties included planning and supervising youth activities such as the recreational outing. Participation in the recreational outing was based on merit; the youths earned the privilege of participating in the outing by following the rules of the Transition Center.
 
 
 5
 Originally, the outing was to include swimming, fishing, and a picnic at the Alum Creek Reservoir. However, Hoversten-Pepper changed the outing to a fishing trip and picnic at the Greenlawn Dam when she found out that there was not enough gasoline in the agency van for the trip to and from Alum Creek Reservoir. Greenlawn Dam is a lowhead roller dam located on the Scioto River.
 
 
 6
 At Greenlawn Dam, the party fished on the northeast bank of the Scioto River. After lunch, the party moved to the more remote western shore of the river where the river flows rapidly and noisily over a spillway. Some of the children, who were wearing swim trunks or cut-offs, began wading in the river to fish. Hoversten-Pepper called them back when they got too far out in the river. At some point, Longstreth and two other youths were wading in the water when Longstreth stepped into a "drop off" in the Scioto River and drowned.
 
 
 7
 Hoversten-Pepper, who was not qualified in water safety or lifesaving, did not attempt to rescue Longstreth since she was alone and could not leave the other children stranded. Further, there were no lifeguards in sight at the river, and the participants had passed signs prohibiting swimming and wading when they arrived in the Greenlawn Dam area. Moreover, Hoversten-Pepper had not brought a life preserver, buoy or life jacket with her on the outing.
 
 
 8
 The Greenlawn Dam area is generally known as a site where previous drowning deaths have occurred. Both the on-site agency supervisor and the administrator of the Transition Center knew of the drownings at Greenlawn Dam, but Hoversten-Pepper apparently did not ask anyone about the suitability of the Greenlawn Dam area for the recreational outing. In addition, plaintiffs assert that Hoversten-Pepper knew from previous outings that Mark Longstreth was afraid of deep water and was a poor swimmer and that she also knew that Longstreth had trouble obeying authority figures.
 
 B.
 
 9
 On September 29, 1989, Linda S. Colling as administrator of Longstreth's Estate filed a wrongful death action in the Franklin County, Ohio, Court of Common Pleas. However, the state court complaint was significantly amended in September 1990.
 
 
 10
 On July 22, 1991, the present civil rights action was filed pursuant to 42 U.S.C. Sec. 1983, alleging the violation of the civil rights of Longstreth and various family members as a result of his death by drowning while in the custody of the defendants. Defendants moved to dismiss the action on the ground that the district court should abstain from exercising jurisdiction over the civil rights action due to the pending wrongful death action in state court.
 
 
 11
 On January 31, 1992, the district court granted in part defendants' motion to dismiss. As a result, the derivative heirs and next of kin were dismissed, but plaintiffs were granted leave to amend their complaint. An amended complaint was filed on March 2, 1992.
 
 
 12
 Thereafter, on September 24, 1992, the Franklin County Court of Common Pleas granted a judgment in favor of defendants in the state wrongful death action, finding that Hoversten-Pepper was not reckless in conducting the outing and further finding that defendants were entitled to immunity under Ohio Rev.Code, Ch. 2744.
 
 
 13
 On October 1, 1992, defendants requested that the district court dismiss this civil rights action based upon the doctrine of res judicata. Subsequently, on December 16, 1992, the district court granted summary judgment in favor of the defendants based upon res judicata.
 
 
 14
 Thereafter, on December 22, 1992, plaintiffs filed a motion for reconsideration, which operated as a time-tolling motion under Federal Rule of Civil Procedure 59(e). While the motion for reconsideration was pending, on January 15, 1993, plaintiffs filed a premature notice of appeal. On February 12, 1993, the district court denied the motion for reconsideration. However, the second notice of appeal referred to in footnote 1 was timely filed on February 19, 1993.
 
 
 15
 Subsequent to the filing of the briefs and joint appendix in this appeal, on June 29, 1993, the Ohio Court of Appeals for the Tenth Appellate District entered an opinion affirming the decision of the Franklin County Court of Common Pleas in plaintiffs' wrongful death action.[3]
 
 II.
 A.
 
 16
 Plaintiff challenges the district court's grant of summary judgment for defendants on the ground of res judicata. On appeal, a district court's grant of summary judgment is reviewed de novo. See Brooks v. American Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991); Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 B.
 
 17
 The facts of this case are essentially undisputed by the parties. However, plaintiff argues that as a matter of law the district court erred in granting summary judgment in favor of defendants on the ground of res judicata. Specifically, plaintiff asserts that the district court erroneously accorded greater preclusive effect to the state court decision than it would be given under Ohio law. Plaintiff also asserts that because the federal civil rights claim under 42 U.S.C. Sec. 1983 and the state law tort claim for wrongful death are different causes of action with different standards for each cause of action, the district court erred in finding res judicata.
 
 
 18
 "In determining what preclusive effect to give to a prior state court judgment, federal courts must give the same effect to that judgment as would be given it under the law of the state that rendered the judgment." City of Canton, Ohio v. Maynard, 766 F.2d 236, 237 (6th Cir.1985) (per curiam) (citing Migra v. Warren City School Dist. Bd. of Educ, 465 U.S. 75 (1984)). This rule has been explicitly applied to actions brought pursuant to 42 U.S.C. Sec. 1983. Migra, 465 U.S. at 84-85. "In deciding whether res judicata ... lend[s] preclusive effect to a particular state court decision, federal courts look to the state's law to 'assess the preclusive effect it would attach' to that decision." Gutierrez v. Lynch, 826 F.2d 1534, 1537 (6th Cir.1987) (quoting Loudermill v. Cleveland Bd. of Educ., 721 F.2d 550, 557 (6th Cir.1983), aff'd, 470 U.S. 532 (1985)).
 
 
 19
 Ohio's doctrine of res judicata bars relitigation of claims upon which a final judgment on the merits has been rendered, and the doctrine also bars those claims which might have been litigated in the first lawsuit. Gutierrez, 826 F.2d at 1537 (citing Norwood v. McDonald, 52 N.E.2d 67, 71 (1943) and Rogers v. City of Whitehall, 494 N.E.2d 1387, 1388 (1986)). But, "[t]o constitute [a bar to the second lawsuit] there must be identity not only of subject matter but also of the cause of action. In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter." Norwood, 52 N.E.2d at 71. " 'The test for determining whether a second suit is for the same cause of action as the first is to consider the facts necessary to sustain the two claims.' " Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1134 (6th Cir.1992) (per curiam) (quoting Duncan v. Peck, 752 F.2d 1135, 1139 (6th Cir.1985)). See also Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 918 F.2d 658, 661-62 (6th Cir.1990) (The determination as to whether a final judgment on a prior claim is res judicata as to a subsequent claim "must be made from an examination of the essential operative facts stated as constituting plaintiff's cause of action and the legal implications arising therefrom in each proceeding." (quoting Norwood, 52 N.E.2d at 73)). See State ex rel. White v. Franklin County Bd. of Elections, 600 N.E.2d 656, 658 (Ohio 1992) (per curiam) ("The most accurate test for deciding if two cases are based on the same cause of action is whether different proof is required to sustain them.").
 
 
 20
 The district court concluded that plaintiffs' Sec. 1983 claims involved the same cause of action as the claim raised in their prior state wrongful death action.
 
 
 21
 The plaintiffs' Sec. 1983 claims name the same defendants and rest upon the same operative facts as their prior state court claims brought pursuant to the Ohio Wrongful Death Statute. Both suits seek to recover from the defendants for the same conduct which allegedly resulted in the death of Mark Longstreth on July 22, 1989. The only substantive difference between the two suits is that plaintiffs' present suit seeks to recover under federal law for alleged constitutional deprivations while their prior suit sought to recover under state law theories. The two suits merely present alternative grounds for relief. Plaintiffs present no reason as to why they could not have included their Sec. 1983 claims in the state court action.
 
 
 22
 J.A. 74-75.
 
 
 23
 The Ohio "doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." National Amusements, Inc. v. City of Springdale, 558 N.E.2d 1178, 1180 (Ohio 1990), cert. denied, 498 U.S. 1120 (1991). See also Covington and Cincinnati Bridge Co. v. Sargent, 27 Ohio St. 233, 237-38 (1875) ("[a] party can not re-litigate matters which he might have interposed, but failed to do in a prior action between the same parties or their privies, in reference to the same subject-matter. And if one of the parties failed to introduce matters for the consideration of the court that he might have done, he will be presumed to have waived his right to do so."). Under Ohio law, "[t]o save time and to relieve court congestion, parties are encouraged, if not commanded, to litigate all their claims in one action, except to the extent that joinder of multifarious and complex issues would produce confusion and prejudice." Rogers, 494 N.E.2d at 1388 (quoting Henderson v. Ryan, 233 N.E.2d 506 (Ohio 1968)). Further, the Ohio Supreme Court has held that a court of common pleas has jurisdiction to hear claims brought under Sec. 1983 against the state as well as officers and employees of the state. Conley v. Shearer, 595 N.E.2d 862, 869-70 (Ohio 1992) (citing Schwarz v. Ohio State Univ. Bd. of Trustees, 510 N.E.2d 808 (1987)). A Sec. 1983 action against state officers or employees may be maintained in either federal court or in an Ohio court of common pleas. Felder v. Casey, 487 U.S. 131, 139, 108 S.Ct. 2302, 2307 (1988) (citing Patsy v. Board of Regents of Florida, 457 U.S. 496, 506-07, 102 S.Ct. 2557, 2562-63 (1982)).
 
 
 24
 In this case, the plaintiffs' state law claim and their Sec. 1983 claim rely on the same necessary or operative facts; namely, the events surrounding the death by drowning of Mark Longstreth on July 22, 1989. In their state court action, under the Wrongful Death Act of Ohio, plaintiffs asserted claims of wrongful death, common law negligence, and negligence per se, alleging that defendants' conduct caused Mark Longstreth's death. In this Sec. 1983 action, plaintiffs claim that Mark Longstreth was deprived of his rights under the Constitution and laws of the United States when he drowned while in the custody of the defendants. They alleged that Hoversten-Pepper was grossly negligent or reckless in taking Longstreth to a known hazard and failing to assure his safety. Further, with respect to Franklin County and its agencies, such as Franklin County Children Services, plaintiff asserted that the agencies' failure to properly train employees deprived Longstreth of his right to reasonable safety while in state custody. Thus, in this case, both actions sought to recover money damages from the defendants based upon the same operative and necessary facts; viz, the same allegedly wrongful conduct. Moreover, because both actions involve the drowning of Mark E. Longstreth, the plaintiffs' state law tort claim and their Sec. 1983 claim accrued at the same time. The only substantive difference between the earlier state action and the later federal action is the legal theories which were advanced to support plaintiffs' claims for damages.
 
 
 25
 Moreover, the same proof was applicable to the state tort claim as to the subsequent civil rights claim. When a state takes a person into its custody, the Constitution imposes upon the state a duty to assume some responsibility for his safety and general well-being. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200, 109 S.Ct. 998, 1005 (1989). However, under Sec. 1983 where a government official is merely negligent, that is, the government official does not act with deliberate indifference or recklessness but rather is merely negligent, no compensation is required. See, e.g. Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670 (1986). Likewise, the Franklin County Court of Common Pleas noted that Hoversten-Pepper was immune from liability unless her actions were done with "malicious purpose, in bad faith, or in a wanton or reckless manner." J.A. 61. The court of common pleas explicitly found that Hoversten-Pepper's actions "did not reach a 'reckless disregard of the safety of another.' " J.A. 62. Moreover, in affirming the decision of the court of common pleas, the state court of appeals also found that neither Hoversten-Pepper nor Children Services acted in reckless disregard of the rights of Mark Longstreth. Rather, the state court of appeals found that it was Longstreth's own individual actions in wading out into the water in contravention of the instructions of Hoversten-Pepper and the "no wading" signs which led to his death. Colling v. Franklin County Children Servs., No. 92AP-1579, 1993 WL 268438 at * 6 (Ohio App. 10 Dist. June 29, 1993).
 
 
 26
 In this case, plaintiff could have asserted its Sec. 1983 claim as part of the state wrongful death action, but it did not do so. Plaintiff argues, however, that because the case involves "two distinct remedial actions" which were "permissibly advanced, at the same time, in both state and federal court," this court should overturn the district court's finding that res judicata bars its federal claims. Appellant's brief, p. 12. Plaintiff further points out that its case does not involve a "successive claim made by a disappointed [p]laintiff." Id. Undoubtedly, both of these statements are true; however, they are simply irrelevant to the issue of whether res judicata bars plaintiff's Sec. 1983 action.
 
 
 27
 Therefore, because plaintiffs' prior state action and subsequent Sec. 1983 action involve the same necessary facts and standards of proof and because plaintiffs' Sec. 1983 claim could have been brought in state court along with their state tort claim, the district court did not err in concluding that res judicata barred plaintiffs' Sec. 1983 action.
 
 B.
 
 28
 Plaintiffs also argue that Ohio's sovereign immunity statutes have no effect on claims brought under Sec. 1983. However, unless a state expressly waives its sovereign immunity under the Eleventh Amendment, the state and its agencies are immune from an action for damages and injunctive relief in federal court. See, e.g., Welch v. Texas Dep't of Highways and Public Transp., 483 U.S. 468, 472-73 (1987). "[T]he Constitution does not require the State of Ohio to offer any waiver of its sovereign immunity." Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities, 825 F.2d 946, 953 (6th Cir.1987) (en banc), cert. denied, 487 U.S. 1204 (1988).
 
 
 29
 In this case, both the Franklin County Court of Common Pleas and the Ohio Court of Appeals for the Tenth Appellate District found that defendants were entitled to sovereign immunity under the provision of Ohio Revised Code, chapter 2744, because the recreational outing on July 22, 1989, was a governmental function of Franklin County Children Services. Ohio Rev.Code Sec. 2744.02 provides in relevant part:
 
 
 30
 (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
 
 
 31
 * * *
 
 
 32
 (B) ... a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 
 
 36
 Moreover, under Ohio Rev.Code Sec. 2744.01, the operation of a children's home or agency is defined as a governmental function.
 
 
 37
 Ohio Rev.Code Sec. 2744.09 also states in pertinent part:
 
 
 38
 This chapter does not apply to, and shall not be construed to apply to, the following:
 
 
 39
 (E) Civil claims based upon alleged violations of the constitution or statutes of the United States ...
 
 
 40
 By its express terms, the Ohio Political Subdivision Tort Liability Act, Ohio Rev.Code Sec. 2744.01, et seq., does not bar actions brought under federal civil rights laws. Hogan v. Village of South Lebanon, 596 N.E.2d 1092, 1094 (Ohio App. 12 Dist.1991) (per curiam). See also Craig v. Columbus City Schools, 760 F.Supp. 128, 130 (S.D.Ohio 1991) ("Where a plaintiff brings a civil action based upon alleged violations of a federal statute" [the Ohio Political Subdivision Tort Liability Act] "does not apply."); Wohl v. Cleveland Bd. of Educ., 741 F.Supp. 688, 691 (N.D.Ohio 1990) (same).
 
 
 41
 Thus, if plaintiffs had brought their Sec. 1983 claim in the state court of common pleas, as it is undisputed that they could have done, the state court would not have been able to dismiss their Sec. 1983 claim based upon sovereign immunity; viz., the Ohio Political Subdivision Tort Liability Act. On appeal, plaintiff essentially argues that under these circumstances, applying the Ohio doctrine of res judicata will unfairly deprive plaintiff of the right to adjudicate the constitutional claim. Plaintiff asserts that this would be unfair because the state claim was properly proceeding in state court and the federal claim was properly proceeding in federal court. However, plaintiff's argument simply misses the point. Federal courts do not have exclusive jurisdiction over Sec. 1983 actions; rather, federal and state courts have concurrent jurisdiction over Sec. 1983 actions. See Felder, 487 U.S. at 139, 108 S.Ct. at 2307. Thus, nothing in this situation required the plaintiffs to split their claims between state and federal court. In this instance, plaintiffs, for whatever reason, tactical or otherwise, split their claims between state and federal court. It is this decision on the part of plaintiffs which makes the res judicata bar applicable in this case. There is nothing unfair or manifestly unjust in making plaintiffs bear the consequences of their own decision to bring their claims separately in state and federal court. This is particularly true where, as here, plaintiffs' decision to split their claims flies in the face of the policy considerations underlying Ohio's doctrine of res judicata--the saving of time and court congestion by encouraging parties to litigate all their claims in one action unless confusion and prejudice would result. See, e.g., Rogers, 494 N.E.2d at 1388.
 
 
 42
 The Ohio Supreme Court has long recognized that the doctrine of res judicata applies in a proper case between federal court and state court judgments. Id. (citing Covington and Cincinnati Bridge Co. v. Sargent, 27 Ohio St. 233 (Ohio 1875). Moreover, in Rogers, the Ohio Supreme Court held that "a claim litigated to finality in the United States district court cannot be relitigated in a state court when the state claim involves the identical subject matter previously litigated in the federal court, and there is present no issue of party or privity." Id. at 1389. In this case, as discussed above, plaintiff's state and federal claims involve the same subject matter, the same necessary facts, and there is no issue of party or privity in the state and federal actions. Further, the state court of common pleas dismissed plaintiffs' claims on the merits. Thus, the Ohio courts would apply the doctrine of res judicata to bar plaintiffs' federal claim.
 
 
 43
 Accordingly, the district court properly concluded that res judicata barred plaintiffs' Sec. 1983 action. Therefore, as the defendants were entitled to a judgment as a matter of law, the district court properly granted summary judgment for defendants.
 
 III.
 
 44
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The caption of plaintiffs' notice of appeal lists the plaintiffs as: "The Estate of Mark E. Longstreth, Deceased, by Linda S. Colling, Administrator, et al." J.A. 118. The body of the notice of appeal refers to "Plaintiffs, the Estate of Mark E. Longstreth, deceased, by Linda S. Colling, Administrator, et al., ..." J.A. 118. The failure to name an appellant in a notice of appeal constitutes a failure of that party to appeal; the term et al., is insufficient to designate the appealing party. Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. Tennessee, 901 F.2d 1327, 1330 (6th Cir.) (en banc), cert. denied sub nom. Davis v. Tennessee Dep't of Employment Sec., 498 U.S. 878 (1990). Therefore, the only party plaintiff in this appeal is the Estate of Mark E. Longstreth, deceased, by Linda S. Colling, Administrator
 
 
 [2]
 In the decision of the Court of Common Pleas of Franklin County, Ohio, defendant's name is spelled Hoverstein-Pepper
 
 
 [3]
 On November 24, 1993, the Ohio Supreme Court overruled plaintiffs' motion to certify the state court record and ordered that the appeal be dismissed sua sponte for the reason that no substantial constitutional question exists in plaintiffs' state court action. A judgment is normally not deprived of its preclusive effect, even if erroneous, unless it is vacated, reversed, or set aside on direct appeal. See Erebia v. Chrysler Plastics Products Corp., 891 F.2d 1212, 1215 (6th Cir.1989)