OPINION
{¶ 1} Defendants-appellants Morrow County Regional Planning Commission, Jean McClintock, and Thomas Weiler appeal from the June 20, 2003, Journal Entry of the Morrow County Court of Common Pleas overruling defendants-appellants' Motion for Judgment on the Pleadings.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The facts, alleged in appellees' complaint, are as follows. In February of 1998, appellees Paul C. Harger Trust, Harger Family Investments, Inc., K. Rowdy Harger, who is the President of Harger Family Investments, Inc., and M. Rick Harger purchased 68 acres for development. After meeting with appellant Jean McClintock, the Morrow County Planning Director, the same month, appellees hired Floyd-Browne Associates to design and prepare sketches of a subdivision in accordance with the Morrow County Regional Planning Commission subdivision rules.
 {¶ 3} Appellees' first sketch of the proposed development, which was submitted in July of 1998, was rejected because of an alleged problem with an intersection.
 {¶ 4} In May of 1998, appellant Morrow County Regional Planning Commission changed its subdivision regulations. However, appellees never received notice of this change or a revised set of the subdivision regulations. A second sketch of the proposed subdivision incorporating the changes was submitted to appellant McClintock in July of 1998. While appellees asked to present this to the Morrow County Regional Planning Commission for its review, appellant McClintock stated that appellees could not get onto the July, 1998, meeting agenda, but would be on the August meeting agenda. Despite requests to be put on the agenda for the next five months, appellees did not appear before the Morrow County Regional Planning Commission until January, 1999, six months after their first request.
 {¶ 5} During the delay in getting appellees' proposed subdivision on appellant Morrow County Regional Planning Commission's meeting agenda, the Morrow County Regional Planning Commission again changed its subdivision regulations without providing appellees a revised set of regulations. Appellees submitted a third proposed sketch of the property to appellant McClintock in November, 1998, which was immediately rejected. On January 20, 1999, the Morrow County Regional Planning Commission Subdivision Review Committee met at the proposed development site and made several comments requiring changes to be made to the current proposed development. On January 27, 1999, appellants Morrow County Regional Planning Commission and McClintock held a meeting and discussed appellees' proposed development and made comments to the plan. Such appellants then advised appellees to schedule another appointment with the Morrow County Regional Planning Commission Subdivision Review Committee once these issues had been addressed.
 {¶ 6} Appellees submitted several new sketches incorporating the requested changes. However, all of the new proposals were immediately rejected by appellants McClintock and Morrow County Regional Planning Commission, and appellant Weiler, who is a member of the Commission.
 {¶ 7} Two (2) additional sketches of the proposed development were submitted by appellees in March of 1999. Appellant Morrow County Regional Planning Commission stated that a variance would be needed for some of the proposed lots, but that the Subdivision Review Committee must review the project. In both April and May of 1999, appellees submitted additional sketches to appellants McClintock, Weiler and Morrow County Regional Planning Commission for review.
 {¶ 8} On May 4, 1999, the Morrow County Regional Planning Commission Subdivision Review Committee reviewed appellees' subdivision, recommended several changes and asked that a park be put back into the proposed development. After the committee also indicated that variances were needed for the proposed frontage for the lots and the length to width ratio for some of the lots, appellees applied for a variance permit. While appellees, in July of 1999, were granted a variance, committee member and appellant Thomas Weiler stated, "MCRPC [Morrow County Regional Planning Commission] will never approve your subdivision."
 {¶ 9} Appellees then asked their engineer, Floyd Browne 
Associates, to design a development that could not be rejected by appellant Morrow County Regional Planning Commission. Appellees submitted this proposed sketch to appellants, who indicated that another variance would be required because of the length of the proposed street.
 {¶ 10} In total, appellees submitted approximately twenty (20) sketches to appellants for the proposed subdivision. Appellees, at appellants' request, took a pond area out of the development. Appellants McClintock and Morrow County Regional Planning Commission then informed appellees that there were too many addresses on one piece of property. Appellant McClintock also informed Floyd Browne Associates that if, "Rowdy Harger stayed away, more progress would get done." On January 10, 2000, appellees filed an additional sketch/preliminary plan for the proposed development and a request for a variance on the frontage requirements and the lot depth to width ratio.
 {¶ 11} On January 18, 2000, the Morrow County Regional Planning Commission Subdivision Planning Committee met and discussed the proposed development. The committee members made comments with respect to the suggested development and stated that the development would be reconsidered when the proper paperwork had been filed. On February 21, 2000, the Harmony Township Trustees sent a letter to appellant Morrow County Regional Planning Commission opposing appellees' proposed development. Such letter read into the record of the proceedings by appellant Weiler, who further stated that, "the reason we are against the developer doing this development is that the developer's only intent is to make more money."
 {¶ 12} Appellees allege that, on March 10, 2000, appellant McClintock held a private meeting with individual residents to draft a petition opposing the proposed subdivision. On March 21, 2000, appellant Morrow County Regional Planning Commission's Variance Committee met and discussed appellees' proposed subdivision and variance requests While the variance did not pass at this time, on May 24, 2000, appellees' request for a variance was approved, subject to approval of the septic systems on the cul-de-sac lots and to increased diameter of pavement in the cul-de-sac. At the meeting, appellant Weiler stated, "we enacted regulations to specifically stop this type of development in (19)98."
 {¶ 13} Subsequently, in September of 2000, appellees notified appellant Morrow County Regional Planning Commission, in an attempt to avoid litigation in this matter, to schedule a meeting to discuss their differences on this project. In October of 2000, appellant Morrow County Regional Planning Commission notified appellees that it had preliminarily approved appellees' proposed developments. In November of 2000, appellees lost the sale of a house because appellees were unable to split a parcel of property due, allegedly, to regulations being unfairly and discriminately enforced.
 {¶ 14} Thereafter, on May 23, 2001, appellees filed a complaint against appellants in the Morrow County Court of Common Pleas. Appellees, in their complaint, alleged that appellants' actions in repeatedly and wrongfully rejecting appellees' proposed development plans constituted a taking under theFifth Amendment to the United States Constitution and Article I, Section 19 of the Ohio Constitution and that appellants tortiously interfered with appellees' business relations. With respect to their tortious interference claim, appellees alleged that the action of appellants Weiler and McClintock "were manifestly outside of the scope of their employment or official responsibilities and/or were committed with malicious purpose, in bad faith, or in a wanton or reckless manner." Appellees, in their complaint, sought damages in excess of $25,000.00, punitive damages, and attorney fees. Appellants, in their June 18, 2001, answer, raised the defense of statutory immunity.
 {¶ 15} Subsequently, on October 15, 2001, appellants filed a Motion for Judgment on the Pleadings pursuant to Civ.R.12(C). Appellants, in their motion, alleged, in relevant part, as follows:
 {¶ 16} "1. As pleaded, plaintiffs have submitted only two formal requests to the Morrow County Regional Planning Commission (hereinafter "MCRPC") — two different requests for variances. As pleaded, both of these requests for variances were granted by the MCRPC. No other formal action has been taken by the MCRPC. Thus, plaintiffs cannot, as a matter of law and common sense file claims against defendants for approval of their requested zoning.
 {¶ 17} "Based on the above, if plaintiffs are unhappy with the zoning process, which is all the complaint amounts to, they have completely failed to exhaust administrative remedies which is an absolute prerequisite to all the zoning claims made here.
 {¶ 18} "2. In addition, plaintiffs' ambiguous claims for taking and for interference with business relations completely fail to plead or state a cause of action.
 {¶ 19} "3. The individual defendants, Jean McClintock and Thomas Weiler, are entitled to immunity pursuant to R.C. 2744, as is the Morrow County Planning Commission."
 {¶ 20} After appellees filed a brief in opposition to such motion, the trial court, as memorialized in a Journal Entry filed on June 20, 2003, overruled appellants' motion.
 {¶ 21} It is from the trial court's June 20, 2003, Journal Entry that appellants now appeal, raising the following assignments of error:
 {¶ 22} "I. The trial court erred in not granting immunity to the appellants.
 {¶ 23} "II. The trial court erred in denying the motion for judgment on the pleadings of appellants Morrow County regional planning commission, Jean McClintock and thomas weiler."
 {¶ 24} Before the merits of appellant's appeal can be addressed, this Court must determine whether the order which is the subject of the appeal is final. A judgment overruling a motion for judgment on the pleadings is generally not a final appealable order. See, for example, Kildow v. Home TownImprovements, Muskingum App. No. CT2002-0039, 2003-Ohio-733. However, R.C. 2744.02(C) provides that an order denying a political subdivision or an employee of a political subdivision immunity from liability is a final order from which an appeal can be taken.
 {¶ 25} Based on the foregoing, we find the trial court's June 20, 2003, Journal Entry was a final, appealable order to the extent it denied immunity to appellants.
 STANDARD OF REVIEW {¶ 26} Motions for judgment on the pleadings are governed by Civ.R. 12(C), which states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Pursuant to Civ.R. 12(C), "dismissal is [only] appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." State ex rel. Midwest Pride IV, Inc. v.Pontious, 75 Ohio St.3d 565, 570, 1996-Ohio-459, 664 N.E.2d 931. The very nature of a Civ.R. 12(C) motion is specifically designed for resolving solely questions of law. Peterson v. Teodosio
(1973), 34 Ohio St.2d 161, 166, 297 N.E.2d 113, 117. Reviewing courts will reverse a judgment on the pleadings if plaintiffs can prove any set of facts that would entitle them to relief.Flanagan v. Williams (1993), 87 Ohio App.3d 768, 772,623 N.E.2d 185, 188. The review will be done independent of the trial court's analysis to determine whether the moving party was entitled to judgment as a matter of law. Id.
 {¶ 27} It is this standard we will utilize to review appellants' assignments of error.
 {¶ 28} Appellants, in their first assignment of error, argue that the trial court erred in not granting immunity to appellants. In their second assignment of error, appellants argue that the trial court erred in denying their Motion for Judgment on the Pleadings. We agree in part and disagree in part.
 {¶ 29} Appellees, in their complaint, allege a cause of action under Section 1983, Title 42, U.S.Code. Appellees specifically alleged, in count one of their complaint captioned "1983 Action Resulting in Taking," that appellants' actions "in repeatedly denying the Plaintiff's proposed development plans have deprived the Plaintiffs of all economically viable use of their property . . . and constitute a taking under theFifth Amendment to the United States Constitution. Section 1983 "provides a remedy to those persons whose federal rights have been violated by government officials." Gubanc v. Warren
(1998), 130 Ohio App.3d 714, 718, 721 N.E.2d 124.
 {¶ 30} Revised Code 2744.09(E) provides that R.C. Chapter 2744 does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions." Therefore, pursuant to R.C. 2744.09(E), the immunities found within R.C. Chapter 2744 do not apply to Section 1983 actions. See, for example, Davis v. Hamilton County Regional Planning Comm. (Feb. 27, 1991), Hamilton App. No. C-890640, 1991 WL 25009. In Davis
the appellees' complaint alleged that the Planning Commission's action rose to a temporary and permanent taking of property without just compensation and due process of law. After the Planning Commission filed a Motion for Summary Judgment, the trial court dismissed such claims holding that the Planning Commission was immune from prosecution. However, the First District Court of Appeals held that, pursuant to R.C. 2744.09(E), the Hamilton County Regional Commission may be liable for damages for loss to the appellants' property resulting from alleged violations of the Equal Protection and Due Process Clauses of the United States Constitution. See also Wohl v. Cleveland Bd. ofEduc. (N.D. Ohio 1990), 741 F.Supp. 688, in which court held that Ohio's sovereign immunity statute does not bar actions brought under federal civil rights laws such as42 U.S.C. Section 1983.
 {¶ 31} However, while appellants are not immune with respect to appellees' Section 1983 claim, they still may still be entitled to immunity on appellees' state claims.
 {¶ 32} R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. Cater v. Cleveland, 83 Ohio St.3d 24, 28,1998-Ohio-421, 697 N.E.2d 610.
 {¶ 33} Revised Code 2744.02(A)(1) states, in part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 34} In turn, the immunity afforded by R.C. 2744.02(A)(1) is subject to the five exceptions listed in R.C. 2744.02(B). R.C2744.02 states as follows"
 {¶ 35} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 36} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
 {¶ 37} "(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;
 {¶ 38} "(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;
 {¶ 39} "(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.
 {¶ 40} "(2) Except as otherwise provided in sections 3314.07
and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 {¶ 41} "(3) Except as otherwise provided in section 3746.24
of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.
 {¶ 42} "(4) Except as otherwise provided in section 3746.24
of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, . . . buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
 {¶ 43} "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision."
 {¶ 44} If one of the exceptions apply, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies.Cater v. City of Cleveland, 83 Ohio St.3d 24, 1998-Ohio-421,697 N.E.2d 610.
 {¶ 45} The first issue for determination is whether appellant Morrow County Regional Planning Commission is a "political subdivision". R.C. 2744.01(F) defines a political subdivision as including a regional or county planning commission. Thus, appellant Morrow County Regional Planning Commission is a political subdivision.
 {¶ 46} The next question is whether appellant Morrow County Regional Planning Commission's actions were protected by R.C. Chapter 2744. Enforcement of zoning laws is in the nature of a governmental function. See Helfrich v. City of Pastakula,
Licking App. No. 02CA38, 2003-Ohio-847. See also State ex rel.Scadden, Franklin App. No. 01AP-800, 2002-Ohio-1352, 2002 WL 452472 (citing City of Columbus v. Bazaar Mgmt., Inc. (Jan. 6, 1983), Franklin App. No. 82AP 33). In this case, the appellant Morrow County Regional Planning Commission's actions in reviewing the development plans clearly fell within the definition of a governmental function. See R.C. 2744.01(C)(2),[1] Brewerv. Butler Cty. Bldg. Zoning Dept. (2001), 142 Ohio App.3d 567,574, 756 N.E.2d 222. We further find that none of the exceptions contained in R.C. 2744.02(B) apply. Based on the foregoing, we find that appellant Morrow County Regional Planning Commission is entitled to immunity under R.C. 2744.02(A)(1) on appellees' non-section 1983 claims.
 {¶ 47} The next issue for determination is whether appellants McClintock and Weiler are immune from liability. R.C.2744.03(A)(6) states as follows:
 {¶ 48} "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 49} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 50} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 51} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee."
 {¶ 52} Revised Code 2744.01(B) defines as employee, in relevant part, as follows: "an officer, agent, employee, or servant, whether or not compensated or fulltime or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's or servant's employment for a political subdivision . . . Employee" includes any elected or appointed official of a political subdivision. . . ." Thus, both appellants McClintock and Weiler are "employees."
 {¶ 53} Appellees, in their complaint, specifically allege that the actions of appellants Weiler and McClintock "were manifestly outside of the scope of their employment or official responsibilities and/or were committed with malicious purpose, in bad faith, or in a wanton or reckless manner." For such reason, we find that the trial court did not err in overruling the motion for judgment on the pleading with respect to appellants McClintock and Weiler. Construing the allegations most strongly in appellees' favor, we find that appellees have alleged sufficient facts which, if proven, could overcome the immunity of such appellants.
 {¶ 54} Based on the foregoing, appellant's two assignments of error are sustained, in part, and overruled, in part, as to appellant Morrow County Regional Planning Commission and overruled as to appellants McClintock and Weiler. In summary, and based solely on a reading of the complaint, we find that appellant Morrow County Regional Planning Commission is entitled to immunity with respect to appellees' state claims but is not entitled to immunity with respect to appellees' Section 1983 claim. We further find that appellants McClintock and Weiler are not entitled judgment on the pleadings, based on the immunity issue, as to the section 1983 claims or any other claims.
 {¶ 55} Accordingly, the judgment of the Morrow County Court of Common Pleas is affirmed in part and reversed in part and this matter is remanded to the trial court for further proceedings.
Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Morrow County Court of Common Pleas is affirmed in part and overruled in part. This matter is remanded to the trial court for further proceedings. Costs assessed 75% to appellants and 25% to appellee.
[1] "A `governmental function' includes, but is not limited to, the following: . . . (p) The provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures." R.C. 2744.01(C)(2).