OPINION
{¶ 1} Defendant-appellant, Wendall K. Hollingsworth ("appellant"), appeals his conviction in the Franklin County Court of Common Pleas on multiple criminal counts arising out of a string of robberies.
 {¶ 2} Appellant stands convicted of one count of aggravated robbery and one count of kidnapping of motorist John Duty on January 24, 2007; one count of aggravated *Page 2 
robbery and two counts of robbery of the Franklin County Animal Shelter on January 24, 2007; one count of aggravated robbery of Hsu Co. on January 25, 2007; one count of aggravated robbery of a clerk, and one count of theft from a customer, at a Certified Oil station on January 27, 2007; two counts of aggravated robbery and one count of felonious assault in connection with his January 28, 2007 robbery of two parishioners attending Mass at Christ the King Church; and two counts of having a weapon while under disability ("WUD"). Appellant was also convicted of firearm specifications associated with all of the foregoing offenses except the WUD charges. The trial court sentenced him to an aggregate prison term of 93 years.
 {¶ 3} Appellant advances two assignments of error for our review, as follows:
 ASSIGNMENT OF ERROR ONE
 THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT REFUSED DEFENDANT'S REQUEST FOR HIS COURT APPOINTED ATTORNEY TO BE REMOVED FROM THE CASE.
 ASSIGNMENT OF ERROR TWO
 THE TRIAL COURT ERRED WHEN SENTENCING THE DEFENDANT TO TWO CONSECUTIVE FIREARM SPECIFICATIONS.
 {¶ 4} In his first assignment of error, appellant contends that he received ineffective assistance of counsel after the trial court refused to remove appellant's appointed defense attorney from the case. The records reveals that on April 24, 2007, August 13, 2007, and September 7, 2007, appellant requested that the court remove his trial counsel and appoint new counsel. *Page 3 {¶ 5} On April 24, 2007, appellant told the court that he wanted a new attorney because he and his attorney could not communicate, his attorney had lied to him about how much compensation the attorney received for representing appellant, and appellant "[didn't] feel comfortable with [the attorney]." (Tr. Vol. I, 4.) Appellant's attorney told the court, "I think it's more an issue of he doesn't like the message than the way I'm actually handling things here." Id. at 5. Thereupon, the court denied appellant's request.
 {¶ 6} On August 13, 2007, appellant told the court that he had requested that his attorney find out how much money he would need in order to retain his own psychiatrist, but his attorney had not returned with that information. The trial court noted that appellant had filed an affidavit of indigency, so, presumably, he did not possess the funds to hire his own psychiatrist, and his attorney had already secured an evaluation by a court-appointed psychologist, at the court's expense. Then appellant said that his attorney "tell[s] me that I better do this or I better do that, if I don't do this, then the Judge will do this and the prosecutor going to do that." Id. at 9. The court told appellant that explaining what counsel knows about the judge and the prosecutor is "[p]art of your attorney's job * * *." Id. Then, appellant stated that he anticipated receiving funds from his mother's estate, and wanted to use that money to hire his own private counsel. He did not have the funds yet, and could not say when he would obtain them. The trial judge told him that if he actually retained private counsel before trial, then, he could use private counsel, but, until then, his appointed counsel would represent him, and the case would move forward.
 {¶ 7} On September 7, 2007, appellant again moved the court to replace his counsel, alleging that his attorney could not properly represent him on charges of robbing a Catholic church because his attorney is Catholic. The transcript of this hearing reveals, *Page 4 
however, that appellant's attorney is Jewish and that, during a meeting several days earlier, appellant spat in his attorney's face and called him a "Jew." Appellant also stated the same grounds he had earlier stated for his request for new counsel, and the court found that the circumstances had not changed so as to merit replacement of appellant's counsel. Ultimately, the trial court found that appellant and his counsel were capable of communicating. The court found that appellant's requests for new counsel, spitting, and refusal to cooperate constituted nothing more than "stalling" and that he was "playing games with th[e] court." Id. at 30.
 {¶ 8} With respect to the spitting incident, appellant's counsel related that he and appellant were discussing the report of a second psychological examination, and appellant became upset when counsel explained that none of the report's conclusions supported a psychological-based defense. Counsel told the court that being spat upon initially frustrated him, but "shortly thereafter I relaxed about it and recognized that it is his frustrations that caused that, and I don't truly believe he meant me any ill will at the time, * * * [a]nd it's not going to affect my ability to represent him in any way." Id. at 33.
 {¶ 9} In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. State v. Thompson, Franklin App. No. 07AP-491,2008-Ohio-2017, ¶ 20. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment to the United States Constitution.State v. Wood, Franklin App. No. 07AP-162, 2007-Ohio-6380, ¶ 12. The defendant must then show that counsel's deficient *Page 5 
performance prejudiced his defense. Id. at ¶ 13. A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. Id. at 697.
 {¶ 10} In this case, appellant's argument in support of his first assignment of error is stated as follows:
 Due to the defendant's frustration of not having new counsel be appointed after numerous requests, the defendant requested to be removed from the courtroom during the trial. * * * During the entire trial defendant was not present and witnesses had to step into a holding tank/jail environment to identify the defendant. If trial counsel would have been permitted to withdraw, defendant would have had the opportunity to fully participate in the trial proceedings.
(Brief of Appellant, 12-13.)
 {¶ 11} Appellant has not identified one deficiency or error in his trial counsel's handling of his defense. For this reason, he fails to meet his burden under the Strickland test. Moreover, contrary to appellant's contention, appellant did have "the opportunity to fully participate in the trial proceedings." He merely refused to avail himself of that opportunity after his repeated attempts to delay trial proved unsuccessful. Appellant's first assignment of error is overruled.
 {¶ 12} In his second assignment of error, appellant argues that, with respect to case No. 07CR-02-995, the trial court erred when it ordered appellant to serve the three-year weapon specification sentences in Counts Four and Eight consecutively. He argues that because Counts Four and Eight both concern the same transaction (the robbery and kidnapping of motorist John Duty), the trial court should have merged these two counts and ordered that the three-year weapon specifications associated therewith, be served concurrently. *Page 6 {¶ 13} In response, plaintiff-appellee, State of Ohio ("the state"), points out that each of the four transactions for which the courtorally sentenced appellant to consecutive terms — the Duty robbery, the Certified robbery, the Hsu robbery, and the Christ the King parishioners robbery — were all committed with a separate animus. At the sentencing hearing, the court stated that, in case No. 07CR-02-995, the firearm specifications for Counts One, Two, and Three (all related to the Christ the King robbery) would merge, and those for Counts Four and Eight (both related to the Duty robbery) would merge, and all remaining specifications (one each for the Certified robbery and the Hsu robbery) would be served consecutively, for a total of 12 years on the weapon specifications. (Tr. Vol. 5, 531.)
 {¶ 14} The state contends that the trial court merely committed a clerical error in drafting its October 4, 2007 sentencing entry when it wrote that the firearm specifications for Counts Four (related to the Duty robbery) and Five (related to the Hsu robbery) would merge, instead of merging the specifications for Counts Four and Eight, as the court had orally pronounced. The state urges this court to remand this matter for the sole purpose of correction of the clerical error, pursuant to Crim. R. 36.
 {¶ 15} Crim. R. 36 provides that "[clerical mistakes in judgments * * * may be corrected by the court at any time." Upon review of the transcript of the sentencing hearing, we agree that the error identified in appellant's second assignment of error is a clerical error. The error necessitates remedial action because a trial court ultimately speaks through its judgment entry. State v. Fout, Franklin App. No. 04AP-1139,2005-Ohio-3151, ¶ 13, reversed on other grounds, In re Ohio CriminalSentencing Statutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109,847 N.E.2d 1174. *Page 7 
 {¶ 16} In State v. Brown, Franklin App. No. 03AP-130, 2004-Ohio-2990, discretionary appeal denied, 103 Ohio St.3d 1481, 2004-Ohio-5405,816 N.E.2d 255, we affirmed the judgment but remanded the case for the trial court to correct a clerical error in a judgment entry to reflect the correct statute under which the trial court convicted the defendant. Similarly, in Fout, supra, and in State v. Silguero, Franklin App. No. 02AP-234, 2002-Ohio-6103, ¶ 14, discretionary appeal not allowed,98 Ohio St.3d 1490, 2003-Ohio-1189, 785 N.E.2d 473, we affirmed, but remanded for the trial court to correct a clerical error in the judgment entry to reflect the correct offenses of conviction. See, also,State v. Jackson, Franklin App. No. 02AP-867, 2003-Ohio-6183, discretionary appeal not allowed, 102 Ohio St.3d 1411, 2004-Ohio-1763,806 N.E.2d 562. The procedure has also been used to correct a clerical error in order that the sentencing entry reflects what occurred at the sentencing hearing. See, e.g., State v. Steinke, Cuyahoga App. No. 81785, 2003-Ohio-3527, discretionary appeal not allowed,100 Ohio St.3d 1507, 2003-Ohio-6161, 799 N.E.2d 186; State v. Akers (June 2, 2000), Sandusky App. No. S-99-035.
 {¶ 17} Accordingly, we sustain appellant's second assignment of error only insofar as we recognize that the trial court made a clerical error in its sentencing entry, and the cause should be remanded to that court with instructions to correct the entry to make it conform to the sentence pronounced at the sentencing hearing. In so doing, we emphasize that our opinion does not affect appellant's aggregate sentence.
 {¶ 18} In summary, we overrule appellant's first assignment of error and sustain his second assignment of error to the extent indicated hereinabove. In sustaining appellant's second assignment of error, we remand the cause in case No. 07CR-02-995 *Page 8 
with instructions to the trial court to correct the clerical error in its October 4, 2007 judgment entry, to accurately reflect the merger of the firearm specifications.
Judgments affirmed;, cause in case No. 07CR-02-995 remanded, withinstructions to correct clerical error.
 PETREE, J., concurs. TYACK, J., concurs in part, dissents in part.