OPINION
{¶ 1} This is an appeal by defendant-appellant, Bruce L. Kring, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of multiple counts of rape and gross sexual imposition, as well as one count of disseminating matter harmful to juveniles. *Page 2 
 {¶ 2} On August 2, 2006, appellant was indicted on 13 counts of gross sexual imposition, in violation of R.C. 2907.05, 21 counts of rape, in violation of R.C. 2907.02, and one count of disseminating matter harmful to juveniles, in violation of R.C. 2907.31. The alleged victims were three minors, "S.C.," identified as the victim in 31 of the counts, "T.C.," identified as the victim in three counts, and "J.C.," identified as the victim in one count.
 {¶ 3} The matter came for trial before a jury beginning May 7, 2007. The first witness for the state was T.C., age eight. T.C. is in the second grade, and has two brothers, S.C., and J.C. For a period of time, T.C. and S.C. lived in the same residence with their grandparents, appellant and his wife P.K. T.C. testified that appellant did things to her that she did not like. Specifically, on one occasion, appellant came into her bedroom and touched her on her "front private" with "[h]is private and his finger." (Tr. Vol. I, at 63-64.) On another occasion, appellant touched her on her "[f]ront and back" area with his hand and private part. (Tr. Vol. I, at 65.) T.C. did not initially tell anyone about the incidents for fear of getting into trouble. Eventually, however, she spoke with a counselor.
 {¶ 4} S.C., age 15, testified that he lived with his grandparents, appellant and P.K., from a very young age until he was 11 years old. Appellant's residence was located on Midland Avenue. S.C. resided there with his brother, J.C., his sister, T.C., and an uncle, W.C.
 {¶ 5} According to S.C., from the time he was age seven and continuing until he moved out of the house at age 11, appellant engaged in "[s]exual activities" with him involving anal intercourse and fondling. (Tr. Vol. I, at 99.) S.C. described the intercourse *Page 3 
as appellant "[p]utting his penis in me and me doing it to him also." (Tr. Vol. I, at 100.) S.C. described the fondling as appellant "touching me in places," and S.C. would also touch appellant's penis "[b]ecause he asked me to." (Tr. Vol. I, at 100.) Appellant also played pornographic movies when he and S.C. were together. The activity occurred either in appellant's bedroom or in the basement of appellant's residence, where an old bed was located. The incidents of intercourse and fondling took place with more frequency when S.C. was younger, but continued until S.C. moved out of the house at age 11.
 {¶ 6} Appellant would "make little threats" to S.C., telling S.C. that "things will happen" if he told anyone. (Tr. Vol. I, at 103-104.) Eventually, S.C. informed a counselor about appellant's activities. On one occasion, S.C. told his grandmother, P.K., about the activity. She responded, "[o]kay, I'll talk to him about it," but "nothing ever happened." (Tr. Vol. I, at 108.)
 {¶ 7} At the close of the state's case-in-chief, defense counsel made a Crim. R. 29 motion for judgment of acquittal. The trial court sustained the motion in part, dismissing the counts alleging fellatio, and also dismissing one count of rape.
 {¶ 8} The first witness for the defense was R.S., a scout master with the Boy Scouts of America. S.C. was a member of R.S.'s scout troop, and appellant would attend scout meetings with S.C. R.S. testified that S.C.'s interaction with appellant was respectful, and R.S. never observed anything that might indicate S.C. had been mistreated by appellant. *Page 4 
 {¶ 9} P.K., appellant's wife, testified on behalf of appellant. P.K.'s daughter, J.C., is the mother of T.C. and S.C. J.C. was living with P.K. and appellant at the time T.C. and S.C. were born. J.C. developed health complications and passed away on July 3, 1999.
 {¶ 10} P.K. testified about taking T.C. to Children's Hospital for an examination, during which T.C. was asked whether she had ever been touched in certain areas. According to P.K., T.C. "said no." (Tr. Vol. II, at 228.) In the fall of 2003, T.C. and S.C. were removed from P.K.'s residence and placed in foster care. P.K. testified that she was unaware of anything ever occurring in her home that would have made her suspect her husband had mistreated the children in any way. P.K. denied that appellant kept pornographic tapes in the house. On cross-examination, P.K. denied that S.C. ever told her that appellant had engaged in inappropriate conduct.
 {¶ 11} The jury returned verdicts finding appellant guilty of four counts of rape with force or threat of force, six counts of rape as felonies of the first degree, 12 counts of gross sexual imposition, and one count of dissemination of matter harmful to a juvenile. The trial court sentenced appellant by judgment entry filed June 26, 2007. The trial court filed a "corrected judgment entry" July 16, 2007.
 {¶ 12} On appeal, appellant sets forth the following three assignments of error for this court's review:
 [I.] THE COURT BELOW ERRED WHEN IT MODIFIED A JUDGMENT ENTRY IMPOSING SENTENCE AFTER THE DEFENDANT HAD BEEN DELIVERED INTO THE CUSTODY OF THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS.
 [II.] THE COURT BELOW ERRED WHEN IT DENIED MR. KRING'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE EVIDENCE WAS INSUFFICIENT, *Page 5 
AS A MATTER OF LAW, TO SUPPORT A GUILTY VERDICT; IN THE ALTERNATIVE, THE GUILTY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 [III.] MR. KRING WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH
AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, § 16 OF THE OHIO CONSTITUTION, WHEN HIS TRIAL ATTORNEY FAILED TO IMPEACH THE VICTIM WITH PRIOR INCONSISTENT STATEMENTS, FAILED TO REQUEST SEVERANCE OF COUNTS BY ALLEGED VICTIM, AND FAILED TO REQUEST NECESSARY JURY INSTRUCTIONS.
 {¶ 13} Under his first assignment of error, appellant argues that the trial court's sentencing entry contains two errors. Specifically, appellant argues the entry failed to address any sentence for the conviction under Count 18, and appellant further contends the entry overstated, by five years, the total sentence imposed on the non-life counts.
 {¶ 14} Regarding the first alleged error, appellant notes that, although the jury returned a guilty verdict on Count 18, charging him with the rape of S.C., the trial court's June 26, 2007 sentencing entry failed to impose a sentence on that count. Appellant argues that the trial court, in its corrected judgment entry filed July 16, 2007, purported to correct the first error by specifically identifying Count 18 in a list of counts for which appellant was sentenced to ten years imprisonment. Appellant argues the trial court erred in modifying the June 26 entry after he had been delivered into custody at the Ohio Department of Rehabilitation and Correction, asserting that the court lacked jurisdiction to correct the sentence once it was executed. *Page 6 
 {¶ 15} In response, the state argues that the trial court's imposition of sentence in its July 16, 2007 entry as to Count 18 was permissible to correct a clerical error. We agree.
 {¶ 16} A review of the record indicates that the trial court conducted a sentencing hearing on June 15, 2007, during which the court pronounced sentences as to the various counts, including Count 18. Specifically, the court stated during the hearing: "On Counts 5, 6, 11, 12, 17 and 18, those are all counts of rape, felonies of the first degree. It will be the sentence of the Court that you spend ten years with the Ohio Department of Rehabilitation and Correction on each one of those counts." (Tr. June 15, 2007, at 11.)
 {¶ 17} The trial court filed a judgment entry on June 26, 2007, and, as noted by appellant, that entry omitted any reference to Count 18. On July 16, 2007, the trial court filed a corrected judgment entry which reflected that the court imposed a ten-year sentence as to Count 18. The corrected entry otherwise included the same language as contained in the original entry filed June 26, 2007.
 {¶ 18} The Ohio Supreme Court has recognized that a trial court is authorized to correct either "a void sentence" or "clerical errors in judgments." State ex rel. Cruzado v. Zaleski, 111 Ohio St.3d 353,2006-Ohio-5795, at ¶ 19. See, also, Crim. R. 36 ("[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time"). Under Ohio law, "[a] nunc pro tunc entry may be used to correct a sentencing entry to reflect the sentences the trial court actually imposed on a defendant at the sentencing hearing and does not constitute an increase of the sentence." State v. Francis (Jan. 25, 2000), Guernsey App. No. 98CA13. Further, a trial court may correct an erroneous sentencing *Page 7 
entry to reflect the penalty imposed at the sentencing hearing "regardless of whether the defendant has already begun to serve his sentence." State v. Parsons (1997), 122 Ohio App.3d 284, 286.
 {¶ 19} In the present case, as noted above, the trial court announced during the sentencing hearing that it was imposing a ten-year sentence as to Count 18. The court's initial judgment entry inadvertently omitted that count, and the court's subsequent entry corrected that error to reflect the sentence the court actually imposed. Contrary to appellant's contention, the trial court did not lack jurisdiction to correct a clerical mistake. See State v. Hollingsworth, Franklin App. No. 07AP-863, 2008-Ohio-2424, at ¶ 16 (where court orally announced at sentencing hearing that certain weapons specifications would be served consecutively, but judgment entry merged those specifications, Crim. R. 36 permitted trial court to correct entry to conform to sentence pronounced at sentencing hearing); State v. Turner, Cuyahoga App. No. 81449, 2003-Ohio-4933, at ¶ 29 (trial court did not err in sua sponte ordering judgment entry of sentence to conform to transcript of sentencing hearing to reflect that court ordered sentences to run consecutive).
 {¶ 20} Appellant raises a separate issue regarding a purported mathematical error in the trial court's sentencing entries. Appellant notes that the initial sentencing entry, filed on June 26, 2007, made the sentences imposed for certain counts concurrent, while other counts were ordered to be served consecutively. Appellant argues that, while the total prison time pursuant to the language in that entry is 21 years and six months, the entry states that the prison term is "four consecutive life terms plus twenty-six and one-half years." Appellant notes that the corrected entry of July 16, 2007 contains the same mathematical error. The state acknowledges that the entries contain an internal *Page 8 
discrepancy, with one part of the entries adding up to four consecutive life sentences plus 21 and one-half years, while another part of the same entries indicates that the sentences add up to four consecutive life sentences plus 26 and one-half years.
 {¶ 21} We agree with appellant and the state that the entries reflect a discrepancy. Further, as noted by the state, the trial court's pronouncement at the oral hearing does not resolve this ambiguity, as a similar discrepancy exists. Accordingly, we are unable to discern the trial court's intent based upon the record before us, and this matter must be remanded to the trial court for clarification of this issue. SeeState v. Lewis, Cuyahoga App. No. 88627, 2007-Ohio-3640, at ¶ 17
(discrepancy between trial court's oral pronouncements at sentencing hearing and terms in sentencing journal entries necessitated remand to trial court for clarification); State v. Ahmed, Cuyahoga App. No. 88315,2007-Ohio-2639, at ¶ 10 (because of "significant discrepancy between the court's stated intent to impose a 45-year sentence and the journal entry that reflects a 55-year sentence, we remand this case back to the trial court to clarify its intentions by reconciling the journal entry").
 {¶ 22} Based upon the foregoing, appellant's first assignment of error is overruled in part, and sustained in part.
 {¶ 23} Under his second assignment of error, appellant asserts the trial court erred in denying his Crim. R. 29 motion for judgment of acquittal because the evidence was insufficient to support the guilty verdicts. Alternatively, appellant argues that the verdicts were against the manifest weight of the evidence.
 {¶ 24} In State v. Darrington, Franklin App. No. 06AP-160,2006-Ohio-5042, at ¶ 15-16, this court discussed the applicable standards of review in considering a motion *Page 9 
for judgment of acquittal, pursuant to Crim. R. 29, and a challenge based upon weight of the evidence, stating as follows:
 A motion for judgment of acquittal, pursuant to Crim. R. 29, tests the sufficiency of the evidence. State v. Knipp, Vinton App. No. 06CA641, 2006-Ohio-4704, at P11. Accordingly, an appellate court reviews a trial court's denial of a motion for acquittal using the same standard for reviewing a sufficiency of the evidence claim. State v. Barron, Perry App. No. 05 CA 4, 2005-Ohio-6108, at P38.
 Sufficiency of the evidence and weight of the evidence are distinct legal concepts. State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617. In Sexton, at P30-31, this court discussed those distinctions as follows:
 To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process, * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
 A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the *Page 10 
credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * *
 {¶ 25} Under his sufficiency argument, appellant first challenges the convictions for gross sexual imposition with respect to T.C. Appellant also challenges the sufficiency of the evidence of force to support several of the rape counts involving S.C.
 {¶ 26} R.C. 2907.05(A) defines the offense of gross sexual imposition in part as follows:
 No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 * * *
 (4) The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 27} R.C. 2907.02 sets forth the offense of rape, and provides in part:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart for the offender, when any of the following applies:
 * * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 * * * *Page 11 
 (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 {¶ 28} "Sexual contact" is defined under R.C. 2907.01 (B) to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 29} Appellant initially challenges the sufficiency of the evidence as to his convictions for gross sexual imposition. Specifically, appellant argues the evidence fails to support a finding that he ever touched an erogenous zone of T.C., or that he did so for the purpose of sexual gratification.
 {¶ 30} We first address appellant's contention that testimony by T.C. regarding the touching of "private parts" is insufficient to support a conviction for gross sexual imposition. Appellant maintains that the failure of the state to make any effort to have the witness explain or demonstrate what she meant by the term "private parts" resulted in a failure to satisfy its burden of proof to show a touching of an erogenous zone. We disagree.
 {¶ 31} It has been held that "[u]se of the term such as `privates' or `private part' by a child is legally sufficient to identify genitals."Clark v. State (Dec. 27, 2001), Texas App. No. 01-00-01235-CR. See, also, United States v. Kenyon (C.A.8, 2005), 397 F.3d 1071, 1077
(testimony that defendant touched victim "in her private part in the `area between her legs' and tried to put his finger inside her private part `in the front' * * * is sufficient to establish the sexual act of touching another's genitalia"). *Page 12 
 {¶ 32} Ohio courts have found similar testimony by a minor that a criminal defendant touched a "private part" sufficient to support a conviction for gross sexual imposition. See State v. Denkins, Hamilton App. No. C-030518, 2004-Ohio-1696, at ¶ 35 (testimony by older victim stating that defendant "inserted his finger into her `private part'" and testimony by younger victim that defendant "touched her `private'" sufficient to support convictions for gross sexual imposition);State v. Glass, Cuyahoga App. No. 81607, 2003-Ohio-879, at ¶ 25 (testimony by minor that appellant pulled her onto bed and "touched her `private parts' with his `private part'" sufficient for jury to have found essential elements of gross sexual imposition); State v.Blankenship (Dec. 13, 2001), Cuyahoga App. No. 77900 (testimony by minor victim that appellant "placed his `private part' in her mouth, in her butt, and in her private parts" sufficient to support rape conviction).
 {¶ 33} In the present case, T.C. testified that appellant touched her "front private" with "his private and his finger," and that, on another occasion, he touched her front and back with his hand and private part. Based upon the above authority, we find no merit to appellant's contention that the testimony at issue, including T.C.'s use of the terms "private" or "private parts," constituted insufficient evidence to support a finding that appellant touched the victim's erogenous zone.
 {¶ 34} Appellant further argues that the state failed to produce evidence that the alleged touching involving T.C. occurred "for the purpose of sexually arousing or gratifying" either appellant or the victim. Appellant maintains that the testimony by T.C. was so non-specific as to preclude any inference that the touching was for the purpose of sexual arousal or gratification. Appellant also contends the trial court expressly relied *Page 13 
upon the testimony of another witness, S.C., to infer the purpose element of sexual contact regarding T.C. Appellant argues that allegations he engaged in sexual activity with S.C. are neither logically nor legally relevant to allegations that he engaged in sexual touching of T.C. for purposes of achieving sexual gratification.
 {¶ 35} In In re Anderson (1996), 116 Ohio App.3d 441, 443-444, the court held:
 The Revised Code does not define "sexual arousal or gratification." In State v. Frazier (Feb. 6, 1989), * * * Butler App. No. CA88-04-051, unreported, this court cited with approval the following language: "[R.C. 2907.01(B)] contemplates any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." * * *
 * * *
 In State v. Cobb (1991), 81 Ohio App.3d 179, * * * and State v. Uhler (1992), 80 Ohio App.3d 113, * * * the Ninth Appellate District considered the fact finder's role in determining whether "sexual contact" had occurred. That court stated:
 Thus, the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.
 {¶ 36} In the instant case, in addition to evidence of appellant touching a described area, the trier of fact also heard testimony that such touching occurred on more than one occasion, that appellant not only used his hand but also his "private part" to touch T.C., *Page 14 
and that the touching took place when appellant and T.C. were alone in the bedroom. T.C. also testified that she did not tell anyone about the touching for fear that she would get in trouble.
 {¶ 37} While there must be some evidence of sexual gratification as the purpose for touching a described area, there is no requirement that there be direct testimony as to sexual arousal or gratification.State v. Edwards, Cuyahoga App. No. 81351, 2003-Ohio-998, at ¶ 22. Here, construing the evidence most strongly in favor of the state, including the "type, nature, and circumstances of the contact," a trier of fact could have reasonably found that appellant touched T.C. for purposes of sexual stimulation for gratification. In re Anderson, supra, at 444.
 {¶ 38} Appellant argues there are legally innocent reasons to touch a younger child's erogenous zone, such as to change a diaper or to help a child get dressed. However, in addition to the evidence cited above, there is a lack of any evidence that the touching of appellant's private part to T.C.'s private part was "inadvertent" or for other non-sexual purposes. See State v. Drayer, 159 Ohio App.3d 189, 2004-Ohio-6120, at ¶ 10 ("no evidence that the alleged contact underneath the girls' clothing was inadvertent"); State v. Mullins, Montgomery App. No. 21277,2007-Ohio-1051, at ¶ 12 (where evidence showed the defendant pressed his body against two boys and placed his hands on their genitals while they slept, and where there was no evidence the touching occurred for medical or other non-sexual purposes, jury could have reasonably inferred defendant touched the boys' genitals for purposes of sexual arousal or gratification). *Page 15 
 {¶ 39} Finally, we disagree with appellant that the purpose element of sexual contact regarding T.C. was dependent upon the testimony of another alleged victim, S.C. On this point, appellant argues that the factfinder was required to consider the evidence as to each count separately. However, irrespective of the testimony of S.C. regarding purported conduct by appellant and S.C., the testimony by T.C., as cited above, was sufficient to show the purpose element as to the verdicts involving conduct against T.C.
 {¶ 40} Appellant also asserts that the verdicts were against the manifest weight of the evidence. Regarding the testimony of T.C, appellant reiterates the arguments he made, in challenging the sufficiency of the evidence, that this witness never identified the body parts she alleged appellant touched with sufficient clarity to sustain the state's burden of proof on the "unlawful touching" aspect of gross sexual imposition, and that the evidence did not support a finding that the touching was done for sexual purposes. In addressing appellant's sufficiency challenge, we rejected appellant's contention that T.C. did not adequately identify with sufficient clarity the body parts appellant allegedly touched in order to support a finding that appellant touched the victim's erogenous zone. We similarly rejected appellant's claim that there was insufficient evidence the touching was done for sexual purposes. Upon review of the record, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice such that the convictions for gross sexual imposition involving T.C. must be reversed as against the manifest weight of the evidence.
 {¶ 41} Regarding appellant's convictions involving alleged conduct against S.C., appellant argues there was no physical evidence to prove he touched S.C. as alleged. Appellant also argues that S.C. made no claim appellant sexually assaulted him until *Page 16 
many months after he was no longer staying at appellant's household. Further, appellant points to S.C.'s testimony that he had spoken with counselors several times a month over a six-month period before he made an accusation against appellant.
 {¶ 42} As to the lack of physical evidence, this court has previously noted that not all victims of rape exhibit signs of physical injury.State v. Reinhardt, Franklin App. No. 04AP-116, 2004-Ohio-6643, at ¶ 29. Thus, "[t]here is no requirement, statutory or otherwise, that a rape victim's testimony must be corroborated as a condition precedent to conviction." Id. Rather, "the testimony of a rape victim, if believed, is sufficient to support each element of rape." Id.
 {¶ 43} As noted, appellant also contends that S.C.'s testimony was not credible, given that he waited a period of time before disclosing the conduct at issue to a counselor. S.C. testified, however, that he waited to report appellant's actions because he was "[s]till scared and nervous." (Tr. Vol. I, at 105.) S.C. related that appellant told him "things will happen" if he said anything, and appellant threatened that "I could be removed" and "beat up." (Tr. Vol. I, at 104.) S.C. stated that he believed appellant would carry out the threats. S.C. testified that he became less afraid as he grew older, and he denied that anyone ever told him to make the allegations against appellant.
 {¶ 44} It is well-settled that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court gives great deference to the factfinder's determination of credibility because "the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v. Wright, *Page 17 
Franklin App. No. 03AP-470, 2004-Ohio-677, at ¶ 11. Here, the trier of fact heard S.C.'s explanation as to why he did not immediately report appellant's conduct. It was within the province of the jury to accept or reject that testimony, and we will not disturb the jury's credibility determination.
 {¶ 45} Appellant also challenges the allegations of forcible rape, based upon the testimony of S.C., involving Counts 24 and 30 of the indictment. Specifically, appellant cites the following portion of the cross-examination of S.C.:
 Q. Okay. Tell me how it would happen that you would have anal sex where you are placing your penis inside him?
 A. He would tell me to do it.
 Q. Is this something that you wanted to do?
 A. Not all the time, no.
(Tr. Vol. I, at 129.)
 {¶ 46} Appellant argues that S.C.'s response indicated that, at least some of the time, S.C. wanted to have anal intercourse with appellant. We disagree.
 {¶ 47} In State v. Ali, Cuyahoga App. No. 88147, 2007-Ohio-3776, at ¶ 25, the court discussed the issue of force where the victim of the rape is a child, citing a line of Ohio Supreme Court cases dating back to 1921:
 The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between a father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties nearly equal in age, size and strength. *Page 18 
 State v. Labus (1921), 102 Ohio St. 26, 38-39 * * *. See, also, State v. Eskridge (1988), 38 Ohio St.3d 56, 58-59, * * * (holding that "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established") (citing State v. Martin (1946), 77 Ohio App. 553 * * *); State v. Dye (1988), 82 Ohio St.3d 323, 329 * * * (holding that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint").
 {¶ 48} In the present case, the testimony of S.C. was that he was fearful of appellant "[b]ecause of the threats that he made." (Tr. Vol. I, at 133.) Appellant "would call my name and tell me to come here." (Tr. Vol. I, at 123.) Specifically, appellant would call S.C. to the basement and "[w]e would do whatever he wanted to do." (Tr. Vol. I, at 128.) Appellant "would say we're going to do this and that's what we would do." (Tr. Vol. I, at 128.) Viewing the testimony in context, and given the disparity in age between S.C. and appellant and the parental authority exercised by appellant, we find unpersuasive appellant's contention that the testimony of S.C. somehow suggested S.C. voluntarily went along with the conduct. Upon review of the record, there was sufficient evidence to support the convictions for rape.
 {¶ 49} Finally, appellant argues that the indictment denied him due process of law. Appellant asserts that the broadly worded charges of the indictment deprived him of double jeopardy protection, and in support he relies upon a federal court decision, Valentine v. Konteh (C.A.6, 2005),395 F.3d 626.
 {¶ 50} In Valentine, the defendant was convicted of 40 counts of sexual abuse, described as 20 "carbon-copy" counts of rape, and 20 similarly worded counts of *Page 19 
felonious sexual penetration. Id., at 628. The defendant subsequently sought habeas corpus relief, and the district court issued the writ, finding that the indictment violated the defendant's "due process right to be notified of the crime charged with reasonable certainty so that he could fairly protect himself from double jeopardy." Id., at 630. The Sixth Circuit, in a divided opinion, affirmed the district court's ruling that the indictment charging the defendant with "multiple, identical and undifferentiated counts violated the constitutional requirements imposed by due process." Id., at 636. The court noted that, when prosecutors "opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy." Id.
 {¶ 51} Upon review, we find Valentine to be distinguishable from the instant case. As one federal court has noted, "[t]he problem inValentine was that because `the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself.'" United States v. Ramos (W.D.Mich. 2007), No. 1:07-CR-08, citing Valentine, supra, at 633. In contrast toValentine, where a defendant has not been charged with multiple counts of the same offense, but, rather, with only a single count of each offense, "the lack of precise dates, locations, or numbers of occurrences of the alleged aggravated sexual abuse does not necessarily affect Defendant's ability to defend himself or to avoid double jeopardy." Ramos, supra. See, also, State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, at ¶ 19 (noting that the court inValentine "focused on the fact that there was no factual bases for forty separate incidents contained in the indictment, the bill of particulars, or in the testimony at trial," thus preventing the jury from considering each count "because they were not connected to distinguishable incidents"). *Page 20 
 {¶ 52} In the instant case, the state filed a bill of particulars on October 10, 2006. In response to a subsequent motion to dismiss filed by appellant, the state filed an amended bill of particulars on April 27, 2007. The amended bill of particulars differentiated the conduct at issue, e.g., noting whether the particular conduct involved "defendant on victim" or "victim on defendant." Here, unlike the situation inValentine, the bill of particulars, as well as the evidence presented at trial, provided an adequate basis for the charges. See State v.Crosky, Franklin App. No. 06AP-655, 2008-Ohio-145, at ¶ 92
(distinguishing Valentine and finding no double jeopardy problem where defendant was not prosecuted for multiple undifferentiated criminal offenses or for a generic pattern of abuse, as multiple counts alleged different time periods and different sexual conduct); State v.Bell, Montgomery App. No. 22158, 2008-Ohio-2578, at ¶ 107
(distinguishing Valentine and finding no violation of double jeopardy where state adequately differentiated between two identically worded counts by filing bill of particulars in which it set out detailed basis for each of multiple counts). Accordingly, we find no merit to appellant's contention that his constitutional right to due process was violated.
 {¶ 53} Based upon the foregoing, appellant's second assignment of error is without merit and is overruled.
 {¶ 54} Under his third assignment of error, appellant asserts he was denied effective assistance of trial counsel. Specifically, appellant maintains that trial counsel's failure to properly impeach a witness, as well as the failure to seek severance of the counts, resulted in prejudice. Appellant further argues that his counsel was ineffective in failing to request an instruction that the counts be considered separately. *Page 21 
 {¶ 55} In order to obtain reversal of a conviction based upon ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, requiring the defendant to "show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, at ¶ 95. In order to prevail on a claim of ineffective assistance of counsel in a case involving a failure to make a motion on behalf of a defendant, the defendant must show "(1) that the motion * * * thereto was meritorious, and (2) that there was a reasonable probability that the verdict would have been different had the motion been made[.]" State v. Lawhorn, Paulding App. No. 11-04-19,2005-Ohio-2776, at ¶ 35.
 {¶ 56} Appellant first contends that the testimony of S.C., in which he stated that the conduct at issue occurred in the basement or in an upstairs bedroom, conflicted with a prior sworn statement S.C. made stating that the activities always occurred in the basement. Appellant argues that trial counsel should have impeached S.C. by one of the methods available under Evid. R. 613.
 {¶ 57} At trial, during cross-examination, defense counsel questioned S.C. about his testimony that the first incident took place in the basement. Counsel asked S.C. whether "you recall testifying about this matter in a hearing * * * some time back, last fall?" (Tr. Vol. I, at 121-122.) Counsel then asked S.C, "isn't it true that during the course of your testimony at that hearing that you said it always happened in the basement?" (Tr. Vol. I, at 122.) S.C. responded, "No." (Tr. Vol. I, at 122.) *Page 22 
 {¶ 58} In general, Evid. R. 613(B) allows for the introduction of extrinsic evidence of a prior inconsistent statement of a witness to impeach the credibility of the witness. State v. Bethel,110 Ohio St.3d 416, 2006-Ohio-4853, at ¶ 180. When extrinsic evidence of a prior inconsistent statement is offered into evidence under Evid. R. 613(B), a proper foundation is established through direct or cross-examination where: "`(1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement.'" State v. Mack (1995), 73 Ohio St.3d 502, 515, quoting State v. Theuring (1988), 46 Ohio App.3d 152, 155.
 {¶ 59} As noted by the state, there is no requirement that the statement be shown to the witness. See Evid. R. 613(A) ("In examining a witness concerning a prior statement made by the witness * * * the statement need not be shown[.]" More significantly, the state further points out that the purported statement is not part of the record before this court. Specifically, the deposition alluded to by appellant was never entered into the record of proceedings in this matter, and, thus, is not available for this court's review. The state suggests that defense counsel may have made a strategic decision not to admit the deposition because other parts of the deposition contained matters harmful to the defense.
 {¶ 60} Because the contents of the deposition are not part of the record on appeal, whether trial counsel declined to use the deposition because it may have contained inculpatory matter harmful to appellant is purely speculative; however, we agree with the state that we are unable to determine, based upon the record before us, whether trial *Page 23 
counsel's failure to directly use the deposition constituted ineffective assistance of counsel. See, e.g., State v. Barnett, Jefferson App. No. 06-JE-23, 2008-Ohio-1546, at ¶ 130 ("When an allegation of ineffective assistance of counsel is based upon material that is not part of the record, the merits of the argument cannot be addressed").
 {¶ 61} Appellant next contends that his trial counsel was ineffective in failing to request severance of the counts involving T.C. and S.C. Appellant argues that the charging documents (i.e., indictment and amended bill of particulars), as well as the testimony, alleges distinct acts against T.C. and S.C. Appellant further argues that other acts evidence is not admissible in separate trials.
 {¶ 62} Ohio law favors the joinder of multiple offenses in a single trial under Crim. R. 8(A). State v. Trammell (Feb. 1, 1999), Stark App. No. 1998CA00026. A defendant must affirmatively demonstrate prejudice from a court's decision not to sever charges. State v. Coleman (1999),85 Ohio St.3d 129, 136. A criminal defendant's claim of prejudice is negated when: "(1) evidence of the other crimes would have been admissible as `other acts' evidence under Evid. R. 404(B); or (2) evidence of each crime joined at trial is simple and direct." State v.Gilbert, Cuyahoga App. No. 86773, 2006-Ohio-3595, at ¶ 22.
 {¶ 63} The state argues that trial counsel's decision not to request a severance may have been the result of any number of legitimate strategies, including avoiding the expense of multiple prosecutions. The state also suggests that counsel may have chosen, as a matter of strategy, to have the counts involving T.C. and S.C. tried together as part of the defense theory that both T.C. and S.C. were making the accusations because of influence from counselors or other family members. *Page 24 
 {¶ 64} In considering a claim of ineffective assistance of counsel, judicial scrutiny of counsel's performance is highly deferential, and a reviewing court "must refrain from second-guessing the strategic decisions of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545,558. Thus, a criminal defendant "must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
 {¶ 65} Here, the record is silent as to trial counsel's possible reasons for not seeking a severance. As noted by the state, however, counsel may have been motivated by trial strategy. In light of the undeveloped record, we are unable to conclude on direct appeal that appellant has overcome the strong burden of showing that his trial counsel's assistance was ineffective, under the first prong ofStrickland, in failing to file a motion for severance. See Grayson v.Thompson (C.A.11, 2001), 257 F.3d 1194, 1218 ("[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, `where the record is incomplete or unclear about [counsel's actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment'").
 {¶ 66} Finally, we find no merit to appellant's contention that his counsel was ineffective in failing to request a limiting instruction to reduce the possibility that evidence of guilt as to one charge will "spill over" into another charge. The decision not to request a limiting instruction "is sometimes a tactical one." State v. Schaim (1992),65 Ohio St.3d 51, 61, fn. 9. While the record in the instant case is not developed on this issue, counsel's decision could have been part of a reasonable strategy to avoid bringing undue attention to the evidence of sexual conduct. See State v. Jovanovic, Cuyahoga App. *Page 25 
No. 89180, 2007-Ohio-6196, at ¶ 30 (trial counsel not ineffective for failing to request limiting instruction; such an instruction "would arguably highlight this testimony to the jury thus providing a sound reason for trial counsel not to request it").
 {¶ 67} Accordingly, having failed to carry his burden of demonstrating that his counsel rendered ineffective assistance of counsel, appellant's third assignment of error is overruled.
 {¶ 68} Based upon the foregoing, appellant's first assignment of error is sustained in part and overruled in part, the second and third assignments of error are overruled, the judgment of conviction entered by the Franklin County Court of Common Pleas is hereby affirmed, and this matter is remanded to that court for clarification as to the sentence imposed.
Judgment affirmed and cause remanded with instructions.
 McGRATH, P.J., and FRENCH, J., concur. *Page 1